IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

OXION, INC., a Colorado Corporation,

       Plaintiff,

                vs.                    Case No. 06-1385-JTM

O3 ZONE CO., INC., an Idaho Corporation,

       Defendant.

**MEMORANDUM AND ORDER**

This action involves a dispute over U.S. Patent No. 7,138,145 ("Patent '145") issued in November of 2006 to O3 Zone Company, Inc. ("O3"), an Idaho corporation. O3's patent concerns a technology which O3 markets as having the capability of preventing disease and bacteria during crop storage, through the application of ozone. Oxion, Inc., a Colorado corporation with a manufacturing and sales facility located in Hugoton, Kansas, is a competitor of O3 and markets a similar ozone generator product and service to members of the farming community.

After receiving a patent for its technology, O3 sent cease and desist letters to Oxion in Kansas on December 11 and 18 of 2006. Both letters requested that Oxion cease and desist use of O3's patented technology immediately and offered Oxion the opportunity to enter into a licensing agreement with O3 for use of the technology. In response to these communications, Oxion brought this declaratory judgment action in the U.S. District Court for the District of Kansas.

Plaintiff Oxion, in its complaint, seeks a declaratory judgment that it has not infringed on O3's patent, and that Patent '145 held by O3 is invalid.  Furthermore, Oxion seeks to establish that defendant, O3, has engaged in unfair competition.  O3 countered this complaint by filing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  Oxion claims that this court can exercise jurisdiction based upon the Kansas long-arm statute and O3's contacts with the state of Kansas through its website and published advertising materials.  Oxion also alleges that O3 committed tortious acts through various false advertising and defamation claims.

In the case at hand, in which the parties rely on affidavits and there has not been evidentiary discovery, the plaintiff carries the burden of making a prima facie showing of jurisdiction to avoid a Federal Rules of Civil Procedure, Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The court follows the well-accepted standard that all well-pleaded, uncontroverted facts are received as true, and views these facts in the light most favorable to the plaintiff.  *Id.*  When jurisdictional allegations are challenged in a pleading, the plaintiff must provide "competent proof of the supporting facts" to support the jurisdictional allegations.  *Pytlik v. Prof. Resources Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).

Federal circuit law applies in this case to resolve the issue of personal jurisdiction.  *See Deprenyl Animal Health, Inc. v. U. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002).  Typically, a court can exercise personal jurisdiction when the requirements of the forum state's long-arm statute and the requirements of the Constitution have both been satisfied. *Taylon v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990).   The Federal Circuit Court, in their analysis of one patent case involving issues of personal jurisdiction, observed that the Kansas

long-arm statute has been interpreted to allow jurisdiction to the full extent consistent with the minimum due process requirements of the Constitution. *Deprenyl Animal Health*, 297 F.3d at 1350 (stating that analysis of jurisdiction collapsed into the single constitutional inquiry). Therefore, federal circuit law provides the basis for the due process analysis, *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1355 (Fed. Cir. 2002), and the court will proceed by setting out the constitutional requirements for personal jurisdiction.

The constitutional inquiry into personal jurisdiction also involves a two-prong test. *Deprenyl Animal Health*, 297 F.3d at 1350 (referring to the seminal case of *International Shoe* and its progeny). The first prong asks whether the defendant's "minimum contacts" with the state where the cause of action is proceeding would allow for the exercise of specific jurisdiction. *Id.* The court looks to see if the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at 1350-1351 (internal quotation marks omitted) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (originally quoted in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-476 (1985))). The other type of contact is "continuous and systematic" contact which permits general jurisdiction, but this type of contact is not at issue in this case. *See Id.* at 1350.

Once it is established that the defendant had "minimum contacts" with the forum state, the second prong of the due process analysis focuses on whether exercising specific jurisdiction would reasonably comport with "fair play and substantial justice." *Id.* at 1351 (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 476-477). The court assesses this second prong taking into consideration the following factors in "appropriate cases":

- the burden on the defendant,
- the forum State's interest in adjudicating the dispute,
- the plaintiff's interest in obtaining convenient and effective relief,
- the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and
- the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King*, 471 U.S. at 477 (internal quotation marks omitted) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

As mentioned previously, the Kansas long-arm statute is bypassed in favor of the "minimum contacts" analysis. However, Oxion's jurisdictional arguments under Kan. Stat. Ann. § 60-308(b)(1) lend insight into Oxion's jurisdictional premise.

First, Oxion contends that O3 "purposefully directed its tortious activities at Kansas causing injuries to Oxion and other Kansas residents." Dkt. No. 17 at 1. Oxion bases part of its argument for personal jurisdiction on Kan. Stat. Ann. § 60-308(b)(1)(G) (2006) which states that a person may submit to jurisdiction in the state of Kansas if she commits any act or omission outside of the state that causes injury to persons or property in the state and at the time of injury either: "(i) the defendant was engaged in solicitation or service activities within this state; or (ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use." The legislative intent of this statute was to allow the exercise of personal jurisdiction "over those who engage in the manufacture, sale, or servicing of products if they receive or can anticipate some direct or indirect financial benefit from the sale, trade, use or servicing of their products within this state." *Ling v. Jan's Liquors*, 703 P.2d 731, 733 (Kan. 1985) (referring to what was then Kan. Stat. Ann.§ 60-308(b)(7) and is now Kan. Stat. Ann. § 60-308(b)(1)).

4

This understanding of the legislative intent reveals the inapplicability of this provision to Oxion's situation.  In essence, Oxion would either need to show that O3 was performing "solicitation or service activities" in Kansas or that O3's goods in the "ordinary course of trade or use" were used in Kansas for the benefit of O3.  It is not alleged that any of O3's goods are being utilized in Kansas.  In contrast, O3's President Lynn Johnson, in his affidavit, maintains that O3 "has no customers in Kansas,"  Dkt. No. 10 Ex. 1 ¶ 5; "has no control over any company, entity, licensee or distributor selling product into Kansas,"  *Id.* at ¶ 8; "receives no royalty payments from any sales of product in Kansas,"  *Id.* at ¶ 9; and "sells no product into Kansas," *Id.* at ¶ 21. Indeed, O3 may not be easily situated to sell products in Kansas because it "owns no property in Kansas,"  *Id.* at ¶ 14; "maintains no stores in Kansas,"  *Id.* at ¶ 15; "operates no business in Kansas,"  *Id.* at ¶ 16; "maintains no office in Kansas,"  *Id.* at ¶ 17; "maintains no sales force in Kansas,"  *Id.* at ¶ 18; "employs no one in Kansas,"  *Id.* at ¶ 19; and "warehouses no product in Kansas."  *Id.* at ¶ 20.

In addition, it does not appear that O3 was involved in "solicitation or service activities" in Kansas.  Aside from O3's website and published advertising materials, which will be addressed later, the closest that O3 came to performing this type of activity occurred when it sent cease and desist letters to Oxion in Kansas along with an invitation to enter into a licensing agreement for O3's patented technology.  But, this activity is insufficient since both Oxion and O3 recognize that the Federal Circuit Court has addressed this issue, stating that the main focus of the due process inquiry goes beyond the defendant's actions in sending cease and desist letters or attempting to license the patent at issue, to other contacts the defendant had with the forum

state.  *See Breckenridge Pharm., Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006).

Oxion further cites subsections (A) "[t]ransaction of any business within this state," and (B) "commission of a tortious act within this state" of Kan. Stat. Ann. § 60-308(b)(1), as grounds for personal jurisdiction over O3.  As mentioned above, in Lynn Johnson's affidavit, O3 was not transacting any business within Kansas, so Kan. Stat. Ann.§ 60-308(b)(1)(A) is inapplicable. With respect to Kan. Stat. Ann. § 60-308(b)(1)(B), Kansas courts have interpreted this provision as allowing a plaintiff to bring suit in Kansas when the injury occurred in Kansas, despite the fact that the intentional tort or negligent conduct occurred outside the state.  *See Ling*, 703 P.2d at 734 (giving broad interpretation to the meaning of "tortious act" under what was then Kan. Stat. Ann. § 60-308(b)(2) and is now Kan. Stat. Ann. § 60-308(b)(1)(B)).

In light of this interpretation, Oxion attempts to meet its burden of a prima facie showing of personal jurisdiction by making allegations of unfair competition pursuant to three tortious acts allegedly committed by O3.  These alleged tortious acts were the result of remarks made on O3's website and other published advertising materials, and Oxion reports that their injurious effects were felt in Kansas to support jurisdiction under Kan. Stat. Ann. § 60-308(b)(1)(B).  The first possible tortious act Oxion identifies is a claim for false advertising under the Lanham Act. The second tortious act involves tortious interference with business relationships.  The third tortious act is a defamation claim.

The crux of Oxion's claim for personal jurisdiction asserts that O3 purposefully directed these tortious activities at Kansas to the detriment of Oxion and other Kansas residents.  Without the benefit of discovery or further information, Oxion arrives at this conclusion by citing

*Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir. 2000), for the proposition that injury (under Lanham Act violations) to Oxion, as a direct competitor to O3, can be presumed as the likely result of the "objectionable statements" made by O3 when it misrepresented its product.  This presumption of injury may help establish the tortious act allegations and provide a basis for jurisdiction under subsections 60-308(b)(1), but does not satisfy the inquiry.

The case of *Trintec Indus., Inc.* suggests that a plaintiff may rely on discovery when evidence additional to the defendant's website is given in support of personal jurisdiction. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (finding that plaintiff offered more than just a website in support of personal jurisdiction including the contacts the defendant had with the District of Columbia through its in-district trade shows, its sales representative's trips there, its product sales there, and other sales it made to the U.S. Postal Service which were possibly traceable there).

Furthermore, in analyzing the due process requirements necessary to establish personal jurisdiction when an in-state injury results from tortious activity outside of Kansas, the Tenth Circuit Court's observations are controlling.  "[T]hose courts finding personal jurisdiction based upon an intentional tort analysis have not created a per se rule that an allegation of an intentional tort creates personal jurisdiction. Instead, they have emphasized that the defendant had additional contacts with the forum."  *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1078 (10th Cir. 1995). The Tenth Circuit Court recognized that there is some disagreement among states as to their willingness to exercise personal jurisdiction over out-of-state defendants whose alleged tortious activity causes injury to those within the forum state.  *Id.* at 1077-1078.  However, despite this disagreement, the Tenth Circuit Court found that mere allegations of tortious interference with

7

contract rights or other business torts, do not by themselves satisfy the Constitution's "minimum contacts" test. *Id.* at 1079.  Instead, a court must still examine "the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws." *Id.*  The court seeks to determine whether the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Federal Circuit Court has not directly addressed whether a website alone is enough for a court to exercise personal jurisdiction. *Trintec Indus., Inc.*, 395 F.3d at 1281 (comparing recent District of Columbia Circuit cases and finding that a "highly interactive, transaction-oriented website" may support long-arm jurisdiction while other times something more than the website is required).  However, many courts have observed that the "nature and quality of commercial activity that an entity conducts over the internet" may determine whether jurisdiction can be exercised over that entity. *E.g. Zippon Mfg. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997); *Soma Med. Intl. v. Stand. Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999) (recognizing, but not necessarily adopting, the analysis found in *Zippon Mfg.* which is used to determine if personal jurisdiction is appropriate based on the level of interactivity of the defendant's website); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (stating that the likelihood of jurisdiction being conferred is often proportional to the "nature and quality of commercial activity that an entity conducts over the internet").  Passive websites do not satisfy the purposeful availment test. *Marynard v. Phila. Cervical Collar Co., Inc.*, 18 Fed. Appx. 814, 816-817 (Fed. Cir. 2001).  However, websites that allow users to enter contracts which "involve the knowing and repeated transmission of computer files over the internet" would meet the

8

purposeful availment test. *Zippon Mfg.*, 952 F. Supp. at 1124 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996).

It is not alleged that O3 has entered into any contracts with Kansans, sold products in Kansas, or has any other relevant contacts with Kansas. Therefore, Oxion's best argument that O3 has purposefully availed itself of the benefit of Kansas' laws derives from the contacts O3 has with Kansas through its website and its other published advertising materials.

Oxion claims O3's website is "undoubtedly interactive, and it solicits business over the Internet." Dkt. No. 17 at 5. Oxion further contends that O3 "communicated blatant falsehoods about its products, and Plaintiff's products, to customers and potential customers on its interactive website and printed media." *Id.* Neither of these contacts are sufficient for the exercise of personal jurisdiction by a Kansas court.

On the spectrum of website interactivity, O3's website seems to fall somewhere in the middle and is more akin to that of a passive website. O3's website does not allow for contracts to be entered into or the purchase/sale of products. Instead, the website does provide the corporation's contact information including its mailing address, telephone number, and fax number, along with telephone numbers and email hyperlinks for corporate officers. The website also provides a contact box that allows visitors to the site to enter personal contact information along with comments or questions that will be submitted to the company.

Posting O3's contact information is of little consequence. *See Marynard v. Phila. Cervical Collar Co., Inc.*, 18 Fed. Appx. 816-817 (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-337, 52USPQ2d 1218, 1220-1221 (5th Cir. 1999) for the proposition that displaying contact information qualifies as a passive website). An email hyperlink also usually fails to establish

sufficient contacts with the forum state. *Mink*, 190 F.3d at 337 (noting that mere presence of email hyperlink would not save the personal jurisdiction claim). The webpage that allows visitors to contact O3 with comments or questions is more troubling, but against the backdrop of the already limited interactive nature of O3's website is also insufficient to support jurisdiction. *See Best Van Lines, Inc. v. Walker*, F.3d, 2007 WL 1815511 at *11 (2nd Cir. 2007) (citing *Lenahan Law Offs., LLC v. Hibbs*, 04-cv-6376, 2004 WL 2966926 at *6 (W.D.N.Y. 2004) for the finding that interactivity of website allowing defendant to answer questions posted on the website did not qualify for personal jurisdiction). Thus, O3's website, of limited interactive nature, fails to satisfy the standards prerequisite to the exercise of general or specific jurisdiction.

Oxion then contends that jurisdiction is appropriate partly due to the "disparaging statements" targeted at it by O3 on its website. Dkt. No. 17, at 5. Oxion claims that the "false and misleading statements" on O3's website were made "widely available to the general public in this forum just as if O3 had published the disparaging statements in a printed Kansas newspaper or magazine." *Id.* Yet, the statements cited by Oxion are merely puffing efforts by O3 to promote its product and contain no direct reference to Oxion aside from vague references to "some companies," "other current technology," or "competitive technologies." The court is hard-pressed to conclude that these were activities of purposeful availment to the Kansas forum.

O3's website also contains links to published advertising materials. Oxion cites the excerpts contained in magazines like Spudman, Feed & Grain, and The Badger Common 'Tater as support for its claim that O3 made false claims as to patents it held. These publications display claims of O3's patented technology dating back to 2004, despite the fact that O3 admits its only patent is Patent '145 obtained in November 2006. Oxion asserts tortious grounds

10

pursuant to these false publications.  It is unclear whether O3 paid to print these advertisements, or whether the magazines solicited O3 to run their stories on ozone technology (although the content of the articles and the surrounding advertisements suggest that O3 was solicited for the stories).  Considering that some of the magazines have as many as 16,000 subscribers and monthly publication intervals, it is possible that if O3 did solicit self-promoting advertisements in the publications than O3 intended to expand its market area.  However, whether O3 wished to expand into the Kansas market is dependent upon the extent of circulation of the magazines within Kansas.

In sum, when the court views all the facts cumulatively in the light most favorable to the plaintiff, the court finds that O3's contacts fall short of a jurisdictional basis.  Oxion's allegations of tortious activities against O3 are insufficient in and of themselves to permit the court to exercise personal jurisdiction, despite the fact that Oxion alleges injury in the state of Kansas. Oxion has failed to show other sufficient contacts that O3 had with Kansas.  Oxion's attempts to satisfy the minimum contacts inquiry through O3's website and published advertising materials, even if the court were to consider these advertising materials as paid advertisements by O3, are lacking as they do not reveal an effort by O3 to purposefully avail itself of the Kansas forum. The court does not find O3's contacts of such a nature that it could expect to be haled into a court within the jurisdiction of Kansas.

IT IS ACCORDINGLY ORDERED this 25th day of July, 2007, that the Motion to Dismiss of defendant O3 (Dkt. No. 9) is hereby GRANTED.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

11